450 So.2d 741 (1984)
STATE of Louisiana
v.
John COVER.
No. 83-KA-795.
Court of Appeal of Louisiana, Fifth Circuit.
May 14, 1984.
Writ Denied September 14, 1984.
*742 John M. Mamoulides, Dist. Atty., 24th Judicial Dist., Parish of Jefferson, David Loeb, William C. Credo, III, Asst. Dist. Attys., Gretna, for appellee; Louise Korns, Asst. Dist. Atty., Gretna, of counsel.
Owen J. Bordelon, Jr., Gretna, for appellant.
Before BOUTALL, C.J., and CHEHARDY and DUFRESNE, JJ.
CHEHARDY, Judge.
On March 24, 1983, John Cover pleaded guilty to possession of cocaine, a violation of R.S. 40:967. He was given a suspended sentence of five years and placed on active probation for a five-year term; several special conditions of probation were imposed. Pursuant to his reservation of rights under State v. Crosby, 338 So.2d 584 (La.1976), defendant has appealed the pretrial denial of his motion to suppress evidence.
On August 5 or 6, 1982, Jefferson Parish narcotics agents received information that two subjects, later identified as John Cover and Vicki Chaisson, were trafficking in narcotics.
The agents set up a surveillance of Chaisson's apartment, during which agents observed traffic going back and forth to the apartment. They also observed Cover and Chaisson go to a nearby motel. According to a tip the agents had received from a confidential informant, Cover and Chaisson were there to set up a narcotics transaction. The couple merely spoke to a few people at the motel, however, and then *743 returned to Chaisson's apartment between 8 p.m. and 9 p.m.
About 1:30 a.m. the next morning, August 7, Chaisson exited her apartment in what Agent Valenti described as "a hurried manner" and drove off in her automobile. At least four agents tailed her. According to Agent Valenti, Chaisson "kind of rolled past" a stop sign prior to entering the Westbank Expressway from the side street. (At trial, Chaisson denied any violation, stating she would not have committed one because she knew the officers were following her and she "wasn't that stupid.")
At this point the officers stopped her because they were under the impression she was on her way to make another transaction. In addition, Officer Valenti testified, "[W]e had spent numerous hours out there and it was time to make [the investigation] come to a conclusion."
After Chaisson got out of the car, both she and the vehicle were searched. The agents found nothing. Subsequently, they advised Chaisson of her Miranda rights and told her she was under investigation for narcotics violations.
The agents questioned Chaisson about John Cover, whom they suspected to be a main trafficker. She was unsure of his last name, but told the agents a man named John was staying at her apartment. The agents requested her to consent to a search of the apartment. At that point she informed the agents she had a small quantity of marijuana in her bureau drawer, for her personal use. Agent Valenti testified he advised her that, if that were the case and she was very cooperative, they would issue her a misdemeanor summons rather than formally arrest her. He said, "She was worried about her children and the idea of going down to the lockup."
Chaisson acquiesced, signed a consent-to-search form, and took the agents back to her apartment. Once there, the agents entered the residence and proceeded to the master bedroom. Defendant Cover, nude, had just emerged from the shower. He was standing next to the bed, on which there was an open satchel containing a quantity of cocaine, 24 Quaalude tablets and assorted narcotics paraphenalia. Cover acknowledged the satchel was his and was arrested. Chaisson was issued a summons for the small quantity of marijuana found in her bureau drawer. (The charge against Chaisson was dismissed on March 24, 1983.)
On appeal, Cover raises the following general assignment of error:
The court committed reversible error in failing to grant defendant's motion to suppress the evidence, inasmuch as said evidence was seized in violation of his rights as guaranteed by the Constitutions of the United States of America and the State of Louisiana.
In his brief, the defendant subdivided this general assignment into three specific grounds, denominating them as individual assignments of error. Because these assignments are merely an expansion of that designated in the record, rather than supplemental assignments appearing for the first time in brief, we will consider them to have been properly submitted to the trial court and therefore to be eligible for review by this court.

ASSIGNMENT OF ERROR NO. 1
Defendant alleges the court erred in denying his motion to suppress the evidence seized unlawfully because the State failed to prove the voluntariness of the "consent" given to search Chaisson's apartment.
As noted recently by the Louisiana Supreme Court,
"* * * One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. When the state seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was given freely and voluntarily. Voluntariness is a question of fact to be determined by the trial judge under the facts and circumstances surrounding each case. The factual determinations of *744 the trial judge are entitled to great weight on appellate review. * * *" State v. Ossey, 446 So.2d 280, 287 (La. 1984).
In Schneckloth v. Bustamonte, 412 U.S. 218 at 249, 93 S.Ct. 2041 at 2059, 36 L.Ed.2d 854 (1973), the Supreme Court defined voluntary consent as that "not the result of duress or coercion, express or implied."
In the case before us, the trial judge determined that Chaisson's consent was given freely and voluntarily. Cover contests this finding on two grounds: (1) the coercive circumstances surrounding Chaisson's detention impaired her ability to make a voluntary choice; and (2) the consent was obtained as a direct result of an illegal detention.
The issue of consent turns on the credibility of the witnesses giving contradictory testimony as well as the circumstances surrounding the consent. State v. Yarbrough, 418 So.2d 503 (La.1982).
At the suppression hearing, Agents Soutullo and Valenti both testified that Chaisson was cooperative with them following her detention and that she voluntarily consented to the search of her apartment.
When asked whether pressure had been exerted toward Chaisson to compel her to sign the consent-to-search form, Valenti replied, "No, sir. She was kind of hyped up and she just wanted to make sure she understood it, and I read it over with her and she read it and she signed it. No problem." Questioned about his use of "hyped up" to describe Chaisson, Valenti replied, "Like she possibly was on some narcotics or maybe alcohol or something like that."
He denied he had promised her any leniency in exchange for signing the form. He testified, however, that when she advised them she kept a little marijuana for her personal use, he told her that if she was very cooperative they would issue her a misdemeanor summons rather than arrest her. He also stated he knew she was worried about what would happen to her children if she had to go to the jail, but said it is common practice to issue a misdemeanor summons for possession of a small amount of marijuana.
On the other hand, Chaisson testified Valenti told her that if she didn't consent to a search of her apartment, they could take her to jail for passing a stop sign and harboring a fugitive. She said that after they told her they would take her to jail if she didn't consent, she signed the paper.
Chaisson described herself as "nervous" and "upset." She said,
"[T]hey promised me this, they promisedthey said that I would not get nothing. I would not go to jail. I would not, you know, get convicted or anything if they would just let me go and search my apartment, if I'd let them go and search my apartment. I had nothing to worry about."
She conceded, however, that after she signed the consent form, one of the agents asked if she was sure she wanted to sign. She stated she remarked at the time, "Yeah, I'll sign it because I don't want to go to jail."
Although the circumstances surrounding the arrest may appear coercive, Chaisson's testimony indicates her concern was directed toward the possibility she might be jailed, rather than that she felt threatened by her physical surroundings.
We conclude Chaisson decided it was in her best interest to cooperate with the officers. The narcotics agents were obviously interested only in John Cover and were willing to treat her leniently in order to secure consent to search her residence. Her cooperation after she signed the consent form indicates she voluntarily agreed to the search in anticipation of procuring the lenient treatment she ultimately received.
In any event, where there is contradictory testimony at trial, the trial judge's evaluations of credibility are entitled to great weight. State v. MacDonald, 390 So.2d 1276 (La.1980).
*745 We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2
Defendant alleges the court erred in denying his motion to suppress the evidence because the State failed to prove reasonable suspicion to justify an investigatory stop of Vicki Chaisson, which resulted in the alleged "consent" to search her apartment.
Specifically, Cover contends that an investigatory stop is not justified unless officers can point to "specific articulable facts" that create reasonable suspicion. In the case at bar, there was a confidential informant's tip that led to an investigation of Cover and Chaisson for trafficking in cocaine. Cover argues the only evidence by the State that might be construed as tending to show reasonable suspicion was Agent Soutullo's statement that his investigation led to the identification of Cover and Chaisson as the persons the informant was talking about.
In State v. Arceneaux, 425 So.2d 740 (La.1983), the Supreme Court held that reasonable cause for warrantless arrest exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. The court went on to say that probable or reasonable cause for warrantless arrest may be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act; compliance with those standards is, in the first instance, a substantive determination to be made by the trial judge from the facts and circumstances.
Here, the surveilling agents had observed "traffic" going back and forth to the apartment. They also observed Cover and Chaisson go to a motel, speak to a few people, and leave. Several hours later, in the middle of the night, they observed Chaisson leave her apartment hurriedly and drive off in her automobile. The officers testified they were under the impression she was on her way to make another transaction. Her behavior was "hyped up."
We conclude, as the trial judge obviously did, that these facts constitute reasonable suspicion to stop Chaisson. Based on the probabilities and practical considerations of everyday life on which "average police officers" (such as these narcotics agents) can be expected to act, and the agents' implied prior experience in observing dealers in illegal drugs, we conclude they had reasonable suspicion to justify an investigatory stop of Chaisson.

ASSIGNMENT OF ERROR NO. 3
Defendant alleges the trial court erred in denying his motion to suppress the evidence seized without a search warrant, because even if the stop of Chaisson was legal and her consent voluntarily given, Chaisson did not have the ability to waive Cover's Fourth Amendment rights; thus the search of the bedroom where defendant was staying violated his right to privacy, of which he had a reasonable expectation.
By this assignment Cover asserts that his privacy interest in the master bedroom of Chaisson's apartment could not be waived by his host.
In United States v. Matlock, 415 U.S. 164, 172, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974), the court summarized the law applicable to this question:
"* * * These cases at least make clear that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. * *" (Footnote omitted.)
In State v. Abram, 353 So.2d 1019 (La. 1977), cert. den. 441 U.S. 934, 99 S.Ct. 2058, 60 L.Ed.2d 663, the court noted that a *746 person's expectation of privacy is severely limited by the joint dominion or authority over the property.
An exception to this general rule occurs when there are within a residence areas or zones for the exclusive use of one tenant or the other. In such a situation, there is no "common authority" which would justify a search based on consent from the non-occupying party. This premise is true in a host/guest relationship i.e., the host could not consent to a search of a room set aside exclusively for the use of a guest.
A second exception in the host/guest context would be articles or belongings which would be most commonly deserving of the "high expectation of privacy" label. Illustrative of this exception is United States v. Poole, 307 F.Supp. 1185 (D.C.La.1969). In that case, police searched Poole's closed overnight bag, which had been left in a friend's hall closet, upon receiving the consent of Poole's host. The court concluded,
"The rule which emerges is that a defendant may object to a search consented to by another where the defendant has exclusive control over a part of the premises searched or over an `effect' on the premises which is itself capable of being (and is) `searched.' `Enclosed spaces' over which a non-consenting party has a right to exclude others, whether rooms or effects, are protected. * * *" 307 F.Supp. at 1189.
The instant case manifests no circumstances that would serve to invoke the exceptions to the general rule. The master bedroom of the apartment was not set aside for the exclusive use of Cover since Chaisson's belongings were still in the room. Nor were the contents of his satchel closed against visual intrusion. Accordingly, we conclude seizure of the evidence was valid.
For the foregoing reasons, we affirm the judgment of the district court.
AFFIRMED.