477 So.2d 788 (1985)
STATE of Louisiana
v.
Benny WATSON.
No. 85-KA-247.
Court of Appeal of Louisiana, Fifth Circuit.
October 10, 1985.
*789 John M. Mamoulides, Dist. Atty., Steve Wimberly, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, (Louise Korns, Gretna, of counsel), for plaintiff-appellee.
John H. Craft, Staff Appellate Counsel, Indigent Defender Bd., Gretna, for defendant-appellant.
Before CHEHARDY, KLIEBERT and GAUDIN, JJ.
KLIEBERT, Judge.
Defendant, Benny Watson, was charged by bill of information with the crime of armed robbery, La.R.S. 14:64. After the defendant's motion to suppress evidence and identification were denied he was tried on March 20th and 21st, 1984 by a jury of twelve persons and found guilty as charged. After a pre-sentence investigation was conducted, the defendant was sentenced to serve five (5) years at hard labor without benefit of parole, probation or suspension of sentence. Defendant now appeals, urging two assignments of error.
The facts which led to the defendant's arrest are as follows. On December 5, 1983 at approximately 6:58 p.m., a man walked into the Kart-n-Carry Food Store at the Tenneco Service Station at 2103 Third Street in Kenner, Louisiana. When asked whether he needed help, the man robbed the store's cashier, Karen Kennedy, at gunpoint. After the cashier placed $300.00 from the cash register into a bag, the robber grabbed the bag and fled the store.
The victim immediately telephoned the Kenner police, and Officer Joseph Marroccoli arrived within a few minutes. The victim described the robber as a black male about six feet tall, wearing a western style, long sleeved, rust colored shirt with embroidery across it, plaid pants with stripes, and sneakers. She identified him as one Benny Black, a man she knew from the neighborhood for the past seven years. Officer Marroccoli called this description and name in on his police radio to headquarters which transmitted the information to the police units in the area.
*790 A few minutes later, Benny Watson and another black male, Lucien Terry, were stopped three blocks from the service station by Officer Steven Caraway. Caraway had known Watson for the past seven years by both his nickname, Benny Black, and his real name, Benny Watson. When apprehended, Watson was not wearing the rust colored shirt which had been described by the victim. However, Caraway had handled an earlier call that day at approximately 2:00 p.m. concerning a controversy between Watson and another person about some tools, and had observed Watson wearing a rust colored shirt at that time.
Detective Gallagher was dispatched to the Tenneco service station. Officer Gallagher transported Karen Kennedy to view the suspect at the scene where he had been apprehended. Watson was standing with Officer Caraway, plainclothes Officer Hartle, and Lucien Terry when Officer Gallagher drove Kennedy slowly past them. She immediately and positively identified Watson as the person who had robbed her approximately ten minutes before while wearing a different shirt. Kennedy also made a positive in-court identification of Watson as the man who robbed her.
After Watson's arrest, detectives conducted a search of 331 Webster Street, a residence located one block from the crime scene owned by Ms. Rosalie McGary. McGary informed the detectives that Watson did live there and that she was in the process of evicting him. After obtaining McGary's signature on a consent-to-search form, the officers accompanied McGary to Watson's room where the officers recovered a rust colored shirt from inside a green garbage bag where McGary had placed Watson's clothes in anticipation of his leaving the residence. No money or gun was ever found.
Watson denied committing the armed robbery, denied wearing a rust colored shirt on the day the robbery occurred, and denied ever owning a gun. Watson maintained that he had been at home alone on the day the robbery occurred and he had left his house only twice that evening to use the telephone at a store one-half block from his house to call his boss about work. According to Watson, the first call was made at 6:30 p.m. He testified that when his boss was not available at that time, he left a message with the boss's daughter that he would call back. Watson testified that no one saw him make this call and he could not remember the name of the boss's daughter whom he claimed he spoke with at 6:30 p.m. Watson further testified that he then decided to visit his cousin. Finding his cousin not at his home, Watson was told by the cousin's wife that he could find him at a place down the street. Watson explained that it was now about 7:00 p.m., so he returned to the store and made a second phone call to his boss, but no one answered. Again, he testified that no one saw him make the phone call; however, after completing his call he saw his friend, Lucien Terry. Watson testified that he had just begun to walk with Terry towards Filmore Street to find Watson's cousin when Officer Caraway stopped them with questions about the armed robbery at the Tenneco Food Store.
In his first assignment of error, the defendant contends that the trial court erred in denying the defendant's motion to suppress his identification by the victim.
The defendant argues that the one-on-one confrontation made approximately ten to fifteen minutes after the robbery was impermissibly suggestive and that the in-court identification was tainted by the out-of-court identification. The defendant also argues that Officer Gallagher impermissibly suggested to Kennedy that the person she was to view was the person who had perpetrated the robbery.
Under similar circumstances in State v. Robinson, 404 So.2d 907, 909 (La.1981) the Louisiana Supreme Court discussed one-on-one confrontations and the established criteria for their admission at trial. The court cited State v. Dauzat, 364 So.2d 1000, 1002 (La.1978) for these principles:
"Where, as in the instant case, a one-on-one in-field identification is closely associated in time with the commission of *791 the crime and where the suspect is returned to the location of the crime for immediate identification, such identifications have been found permissible. State v. Kelly, 362 So.2d 1071 (La.1978). One reason for declining to disapprove such procedures is that they promote fairness by assuring reliability and the prompt release of innocent suspects. State v. Dunbar, 356 So.2d 956 (La. 1978). Applying the totality of the circumstances rule set forth in Neil v. Biggers, supra [409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401] (more recently asserted by the United States Supreme Court in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 [1977]) we conclude that the record establishes the reliability of the in-field identifications."
See also State v. Culpepper, 434 So.2d 76 (5th Cir.1982).
The circumstances of this identification clearly fall within the exception noted in Robinson. The defendant was apprehended and arrested only a few minutes after the robbery took place and within three blocks of the crime scene.
Reliability is the linchpin in determining the admissibility of identification testimony. The factors to be considered include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty displayed at the confrontation and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification. The standard to be applied is that of fairness as required by the due process clause of the fourteenth amendment. In the final analysis, it must be determined whether under all the circumstances of a particular case there is a very substantial likelihood of irreparable misidentification. State v. Davis, 409 So.2d 268 (La.1982); Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Robinson, supra; State v. Culpepper, supra.
Kennedy testified that she saw the defendant for several seconds in the well-lit store and that she recognized him as an acquaintance from the neighborhood. Kennedy's description of the perpetrator was very accurate and she testified that she was positive that Watson was the same man who had robbed her. Only ten minutes had elapsed between the time the robber left the Tenneco station food store and the identification made by Kennedy. Under these circumstances, there was not a substantial likelihood of irreparable misidentification. We also conclude that the in-court identification was not tainted and that the conduct of Officer Gallagher did not lead to the misidentification of the robber.
In assignment of error number two the defendant alleges that the trial court committed reversible error in denying the defendant's motion to suppress the rust colored shirt seized from a green plastic garbage bag obtained during a search of the house where he was staying at the time of the crime. Defendant argues that the seizure was illegal and in violation of his constitutional rights governing search and seizure under the Fourth Amendment of the United States Constitution and Article I, Section 5 of the Louisiana Constitution.
The shirt was seized less than an hour after the defendant's arrest. The consent-to-search form signed by Rosalie McGary, the owner of the house, was introduced by the State without objection at the suppression hearing and at the trial on the merits.
It is well settled that a search warrant is required unless one or more of the narrowly drawn exceptions to that requirement is present. A valid consent to search is such an exception. State v. Washington, 407 So.2d 1138 (La.1981). The consent to search is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Bodley, *792 394 So.2d 584 (La.1981); State v. Cover, 450 So.2d 741 (5th Cir.1984).
This common authority stems not so much from a property interest,
"... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." Matlock, supra, 94 S.Ct. at 993, fn. 7.
In State v. Cover, supra, this court discussed United States v. Poole, 307 F.Supp. 1185 (D.C.La.1969) and quoted from it the following rule:
"The rule which emerges is that a defendant may object to a search consented to by another where the defendant has exclusive control over a part of the premises searched or over an `effect' on the premises which is itself capable of being (and is) `searched.' `Enclosed spaces' over which a non-consenting party has a right to exclude others, whether rooms or effects, are protected. * * *" 307 F.Supp. at 1189
A person's expectation of privacy is severly limited by the joint dominion or authority over the property. State v. Abram, 353 So.2d 1019 (La.1977), cert. den. 441 U.S. 934, 99 S.Ct. 2058, 60 L.Ed.2d 663.
In this case, Rosalie McGary, the defendant's girlfriend, with whom he lived at the time of the crime, did sign a consent form giving her consent to the search, and it was established that her consent was freely and voluntarily given. The defendant contends that McGary did not have the authority to waive his Fourth Amendment rights to the search of the garbage bag where the shirt was found and seized. The defendant asserts that the search of the garbage bag is tantamount to the search of luggage, which would have been a violation of his reasonable expectation of privacy, as was held in State v. Wilkerson, 367 So.2d 319 (La.1979).
According to Detective Hartle's testimony at the suppression hearing, McGary showed the officers to the room where the defendant was staying. McGary informed Detective Hartle that she had packed Watson's clothes in the garbage bag during the day and was going to have Watson move out. As the owner of the house, McGary had authority over the room therein where the defendant lived. Since McGary was the person who placed the defendant's clothes in the garbage bag, McGary also possessed a degree of authority over the garbage bag and therefore McGary could have authorized the search of the garbage bag. The defendant did not have the right to expect privacy of the garbage bag and the officer had justification to search the garbage bag without a warrant. Accordingly, we conclude that the trial court properly denied the defendant's motion to suppress the evidence.
Finally, any error committed by the trial court in permitting the State to introduce the defendant's rust colored shirt which it had gained through an alleged unreasonable search and seizure was harmless where the shirt was of limited value in connecting the defendant with the robbery since the positive and reliable identification by the victim was sufficient to prove the identity of the robber. The possibility that the introduction of the defendant's shirt might have contributed to defendant's conviction was less than reasonable. Finding the shirt did nothing to prove that a crime had been committed but rather only supported the victim's identification of the robber. Since the victim positively identified the defendant as the perpetrator of the robbery and since we have determined that that identification was a reliable one, it is our opinion that the admission of the shirt into evidence, if erroneous, was harmless error beyond a reasonable doubt under the circumstances.
The defendant's conviction is therefore affirmed.
AFFIRMED.