631 So.2d 1208 (1994)
STATE of Louisiana
v.
David G. HARGRAVE.
No. 93-KA-628.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 1994.
*1209 Carol Runnels Welch, LaPlace, for plaintiff/appellee.
Robert M. Becnel, Becnel, Landry & Becnel, LaPlace, for defendant/appellant.
Before BOWES, GRISBAUM and GOTHARD, JJ.
GOTHARD, Judge.
Defendant, David Hargrave, appeals a trial court judgment denying his motion to suppress evidence in a criminal proceeding against him. For the following reasons, we affirm the conviction, vacate the sentence and remand.
On November 10, 1992, the state filed a bill of information in the 40th Judicial District Court charging defendant, David Hargrave, with cultivation of marijuana, in violation of LSA-R.S. 40:966A(1). At the February 16, 1993 arraignment, defendant pled not guilty.
On April 21, 1993, the trial court conducted a preliminary hearing to determine probable cause, as well as a hearing on defendant's motion to suppress. After taking the matter under advisement, on May 7, 1993, the trial court rendered judgment, finding probable cause to hold defendant for trial. The trial court also denied defendant's motion to suppress the marijuana plants which were recovered from a greenhouse in defendant's backyard, *1210 but granted the motion to suppress the marijuana found in a clear plastic bag in defendant's personal desk drawer in his home.
On June 1, 1993, defendant withdrew his former plea of not guilty, and after filling out a waiver of rights form, pled guilty to the charged offense.[1] In accordance with a plea bargain agreement, the trial judge sentenced defendant to five years at hard labor. The trial judge suspended the sentence on the condition that defendant serve five years active probation. As further conditions, defendant was ordered to pay a $25.00 monthly probation fee, a $1,000.00 fine, and $179.00 in court costs. The imposition of the sentence was suspended pending this appeal.
At the suppression hearing, Detective Sergeant Vernon Bailey of the St. John Parish Sheriff's Office testified that on December 6th and 7th, 1990, he received three anonymous phone calls advising him that defendant was growing marijuana plants in the greenhouse behind his residence. As a result of the calls, Detective Bailey arranged a surveillance of defendant's residence. Deputy Vincent Stuart of the St. John Parish Sheriff's Office, and Brian Coon, a national guardsman working with the Sheriff's Office, participated in the surveillance. They observed defendant go into his residence, stay there about fifteen to twenty minutes, and then leave.
When Detective Bailey arrived at the residence, he knocked on the door and was greeted by seventeen year old Christopher Sanchez. Bailey learned that Sanchez was the son of Josephine Hargrave, defendant's wife, and that he lived at that residence. Bailey advised Sanchez of the phone calls reporting marijuana cultivation and asked his permission to go into the backyard to the greenhouse to see if any of the plants existed. Sanchez verbally gave Bailey permission to go into the backyard. In addition, he gave Bailey written consent to enter the backyard and search the greenhouse.
After execution of the consent form, Bailey went to the greenhouse and found fortythree marijuana plants, each of them approximately three to four feet tall. After finding the plants in the greenhouse, Bailey searched the defendant's residence and found a small plastic bag containing marijuana in defendant's desk drawer. The plants and plastic bag were seized and taken to the laboratory for analysis. They were positively identified as marijuana. Later that evening, defendant surrendered to police. After being advised of his constitutional rights, defendant gave a written statement, admitting sole responsibility for cultivating the marijuana. Defendant was thereafter placed under arrest.
After listening to the testimony at the suppression hearing, the trial judge took the matter under advisement. He thereafter rendered judgment denying the suppression of the plants seized from the backyard greenhouse, but granting it in regards to the marijuana seized from defendant's personal desk drawer. Defendant appeals, contending that the state has failed to carry its burden of proving that the search was voluntarily consented to by a person with common authority over the thing searched.
The Fourth Amendment to the United States Constitution and Article 1, Section 5 of the Louisiana Constitution protects individuals against unreasonable searches and seizures. It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well delineated exceptions. One such exception is a search conducted pursuant to consent. State v. Owen, 453 So.2d 1202 (La. 1984); State v. Watson, 477 So.2d 788 (La. App. 5th Cir.1985).
When the state seeks to rely upon consent to justify a warrantless search, it must demonstrate that the consent was freely and voluntarily given without coercion. State v. Wilson, 467 So.2d 503 (La.1985), cert. denied, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985), rehg. denied, 474 U.S. 1027, 106 S.Ct. 585, 88 L.Ed.2d 567 (1985). The voluntariness of an individual's consent to search is a question of fact to be determined *1211 by the trial judge under the facts and circumstances surrounding each case and the trial court's determinations as to the credibility of witnesses is to be accorded great weight on appeal. State v. Wilson, supra; State v. Cover, 450 So.2d 741 (La.App. 5th Cir.1984), writ denied, 456 So.2d 166 (La. 1984). In the present case, Detective Bailey testified that he advised Christopher Sanchez that the police either have to present a search warrant or have a voluntary consent to search by a resident. Bailey further advised Sanchez that if he did not want to voluntarily consent to the search, the officers would have to provide him with a search warrant. Thereafter, Sanchez gave Bailey both verbal and written consent to search the backyard greenhouse. In rendering judgment, the trial judge determined that Sanchez freely and voluntarily consented to the search. After a thorough review of the record, we see no error in this determination. Thus, the next inquiry is whether Sanchez had authority to consent to such a search.
In State v. Watson, supra, at pp. 791-792, this court stated the following regarding consent searches:
The consent to search is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Bodley, 394 So.2d 584 (La.1981); State v. Cover, 450 So.2d 741 (La.App. 5th Cir.1984). This common authority stems not so much from a property interest,
"... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." Matlock, supra, [415 U.S. at 171, fn. 7,] 94 S.Ct. at 993, fn. 7.
In Gregoire v. Henderson, 302 F.Supp. 1402 (E.D.La.1969), the court held that a seventeen year old boy (defendant's nephew) who was permanently living in his father's home, was capable of giving valid consent to a police officer to search the premises. In so holding, the court noted: "... we are unable to find any authority to support the proposition that a seventeen year old boy cannot, as a matter of law, give consent for a search of the premises in which he lives with his family. The age of the boy should, of course, be considered by the trier of fact to be one factor in determining whether or not consent was freely given." Id. at 1407.
In State v. Revere, 572 So.2d 117 (La.App. 1st Cir.1990), writ denied, 581 So.2d 703 (La.1991), the court held that consent to search a house given by the victim's father was valid, even though there might have been a plan for the father to move into a different residence, leaving the defendant as the sole occupant of the house. The plan was not put into effect due to the victim's death, and at the time of the victim's death, both the defendant and the father were living in the house. In addition, at the time the father signed the consent to search form, he was still sharing occupancy of the house with the defendant.[2]
In U.S. v. Clutter, 914 F.2d 775, 777-78 (6th Cir.1990), cert. denied, 499 U.S. 947, 111 S.Ct. 1413, 113 L.Ed.2d 466 (1991), the court held that:
As a general consideration, there is every reason to suppose that mature family members possess the authority to admit police to look about the family residence, since in common experience family members have the run of the house. So, in that sense, absent special circumstances, all rooms in the residence can be said to be areas of usage common to all members of the family. It is, of course, conceivable that family members will exclude from this common authority access to areas where they wish to maintain an expectation of privacy, even from other members of the *1212 family. Accordingly, courts are understandably reluctant to approve third-party consent searches of an enclosed space in which the family member targeted for the search has clearly manifested an expectation of exclusivity. See, e.g., United States v. Block, 590 F.2d 535 (4th Cir.1978) (thirdparty consent search of secured footlocker ruled invalid). It should be noted, however, that the Supreme Court has resisted a strained application of such an exclusive control concept. See Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).
In the present case, there were no specific details given at the suppression hearing as to the facts and circumstances surrounding Sanchez's residency at the house. However, it was clear that he was Mrs. Hargrave's son and that he was residing there with his family. Since a backyard greenhouse is unlike a secured footlocker or personal desk drawer where a greater expectation of privacy may exist, and since defendant failed to even allege that he manifested an expectation of exclusivity over the greenhouse, we see no error in the trial judge's determination that Sanchez had authority to consent to a search of the greenhouse located in the backyard.
In addition to arguing that the state failed to prove that Sanchez had common authority over the greenhouse, defendant contends that in evaluating the validity of the consent, the court should also take into account the ambiguous nature of the consent form as well as the incorrect date contained therein. Defendant contends that the following language in the consent form is ambiguous: "We want to inform you that you have the right to require that no search be conducted without a search warrant." Defendant also alleges that nowhere on the consent to search form did it clearly state that a person has the right to refuse to consent to a search. Although the language used on the form is somewhat awkward, it conveyed the message that the person could refuse to consent to a search. In addition, Detective Bailey verbally advised Sanchez that he did not have to allow a search without a warrant. Moreover, even if Sanchez was not informed of his right to refuse to consent to a search, such a warning is not required. Instead, the lack of such a warning is only one factor in determining the voluntary nature of the consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Overton, 596 So.2d 1344 (La. App. 1st Cir.1992), writ denied, 599 So.2d 315 (La.1992).
Defendant also contends that the consent to search form was defective because it contained an incorrect date. While the actual date of the search was December 7, 1990, the form shows that the consent to search was executed on November 7, 1990. At the suppression hearing, Detective Bailey testified that the wrong date was put on the form by mistake. This typographical error in no way affects the validity of the consent to search form, especially in light of the fact that written consent is not required. State v. Ossey, 446 So.2d 280 (La.1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984). For the foregoing reasons, the trial judge did not err in denying defendant's motion to suppress the marijuana plants seized from the greenhouse.
La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." Pursuant to art. 920(2), a review of the record reveals an error in sentencing. When the trial judge imposed sentence, he stated:
Mr. Hargrave, the Court will impose a five year, Department of Correction jail sentence on you, which will be suspended on the following conditions: That you serve five years with the Department of Corrections; active probationthat you serve five years active probation through the Department of Corrections; that you pay a minimum probationary fee to defer the cost of your probation officer in the amount of twenty-five dollars per month; that you pay a fine of one thousand dollars; court cost of a hundred and seventy-nine dollars ... I will suspend the imposition of the sentence pending the appeal.
*1213 In the present case, it appears that the trial judge intended to suspend defendant's five year sentence and place him on probation for five years, subject to various special conditions. However, the transcript and minute entry reflect that the trial judge suspended defendant's sentence and made probation a condition of suspension. This is in violation of LSA-C.Cr.P. art. 893(A), which reads, in pertinent part:
When it appears that the best interest of the public and of the defendant will be served, the court, after a first or second conviction of a noncapital felony, may suspend, in whole or in part, the imposition or execution of either or both sentences, where suspension is allowed under the law, and in either or both cases place the defendant on probation under the supervision of the division of probation and parole.
After a trial judge places a defendant on probation pursuant to LSA-C.Cr.P. art. 893, only then is he authorized to impose conditions of that probation pursuant to LSA-C.Cr.P. art. 895. Thus, insofar as the sentence imposed does not conform to arts. 893 and 895, the sentence is hereby vacated and the matter is remanded for resentencing. LSA-C.Cr.P. art. 881.4. In all other respects, the judgment of the trial court is affirmed.
CONVICTION AFFIRMED, SENTENCE VACATED AND REMANDED.
NOTES
[1] Defendant's plea was entered pursuant to LSA-C.Cr.P. art. 893, as well as State v. Crosby, 338 So.2d 584 (La.1976).
[2] See also State v. Price, 476 So.2d 989 (La.App. 1st Cir.1985), where the court held that third party consent given by defendant's uncle to warrantless search of room he shared with defendant was valid, given uncle's common authority over premises.