649 So.2d 740 (1994)
STATE of Louisiana, Appellee,
v.
Victor MELBERT, Defendant-Appellant.
No. CR-140.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1994.
*741 Douglas L. Hebert Jr., Kinder, for State.
Thomas James Davis, Oakdale, for Victor Melbert.
Before DOUCET, SAUNDERS and WOODARD, JJ.
SAUNDERS, Judge.
The state charged defendant-appellant, Victor L. Melbert (hereafter MELBERT), by bill of information for possession with intent to distribute a controlled dangerous substance, Schedule II, cocaine, in violation of Louisiana Revised Statutes 40:967(A)(1). After a trial, the jury returned a verdict of guilty as charged. The trial court sentenced MELBERT to four and one-half (4½) years at hard labor.
The defendant appeals his conviction contending that the trial court erred when it failed to suppress evidence seized without a search warrant and failed to rule on defendant's pretrial motion to suppress his arrest.

ERRORS PATENT
Louisiana Code of Criminal Procedure article 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the trial court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and this is not grounds to reverse the sentence or remand the case for resentencing. La.Code Crim.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under Articles 914 or 922, so prescription is not yet running. The purpose of the notice of Article 930.8(C) is to inform the defendant of the prescriptive period in advance. Consequently, we order the trial court to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Fontenot, 616 So.2d 1353 (La.App. 3d Cir.), writ denied, 623 So.2d 1334 (La.1993).

Facts
On October 11, 1992, Deputy Jason Artis received a tip from a reliable confidential informant that the defendant, MELBERT, trafficked in cocaine and possessed a large amount of it at his residence. Information provided by that confidential informant had proven worthwhile in the past and had led to other unspecified arrests and convictions. Deputy Artis contacted his supervisor, Deputy Grant Willis, and provided him with the information. They attempted to obtain a search warrant for the home of Bobbie and Britt Wilson in which MELBERT resided, but due to a judges conference in New Orleans, the deputies were unable to locate their local judge or the neighboring judges in the Thirteenth Judicial District.
*742 Deputy Willis suggested that Deputy Artis approach the owners of the home directly and request their permission to search the home. At approximately 7:00 p.m. that evening Deputy Artis approached Bobbie Wilson at her place of employment and requested her written permission to search her house. Deputy Artis reviewed with Ms. Wilson the permission to search form and also provided her with the reason why they wanted to search the home. Ms. Wilson signed the form and gave her permission for the search of her home. The deputies placed the home under surveillance and awaited the return of the suspect, MELBERT, before conducting the search. At approximately 11:45 p.m. MELBERT and his girlfriend, Samantha Wilson, the daughter of Bobbie and Britt Wilson, returned home. Approximately fifteen (15) minutes after they entered the home, the deputies entered the home. They first approached Bobbie Wilson and asked her again if she still consented to the search of her home. She acknowledged her signature on the permission form that she signed earlier in that day and again granted them permission to search her home. She identified the rooms of her home and then the deputies began their search.
Deputies entered the bedroom in which MELBERT stayed and searched a brown boot bag located on the floor at the foot of the bed. Inside the bag, deputies located a large ziplock bag which contained three (3) other smaller ziplock baggies of what they believed was crack cocaine. After seizing the evidence, deputies placed MELBERT under arrest. The search of the room continued and deputies located two stolen watches, additional narcotics, and approximately $800.00 in cash stuffed in socks in a dresser drawer.
The state charged MELBERT for possession with intent to distribute crack cocaine. After a trial was held on February 24, 1994, the jury returned a verdict of guilty as charged. Subsequently, the trial court sentenced MELBERT to four and one-half (4½) years at hard labor.

Assignments of Error Nos. 1 and 2
In assignments of error numbers one and two, MELBERT contends that the trial court erred in denying his motion to suppress evidence allegedly seized from an invalid consensual search.
Generally, the constitutions of both the United States and Louisiana prohibit unreasonable searches and seizures, including seizures of evidence from searches made by law enforcement officers without a warrant. The courts, however, recognize consent to search as an exception to the general rule. Consent to search may be given by one who possesses common authority or sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Bodley, 394 So.2d 584 (La. 1981).
In United States v. Matlock, 415 U.S. at 171, fn. 7, 94 S.Ct. at 993, fn. 7, the court explained:
"7. Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, see Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (landlord could not validly consent to the search of a house he had rented to another), Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."
This court recognizes, however, that this ability to consent to a search of an area over which one has joint dominion is not unlimited. In State v. Evins, 626 So.2d 480, 495 (La.App. 3d Cir.1993), this court quoting from State v. Cover, 450 So.2d 741, 746 (La. App. 5th Cir.), writ denied, 456 So.2d 166 (La.1984), stated that:

*743 "An exception to this general rule occurs when there are within a residence areas or zones for the exclusive use of one tenant or the other. In such a situation, there is no `common authority' which would justify a search based on consent from the non-occupying party. This premise is true in a host/guest relationshipi.e., the host could not consent to a search of a room set aside exclusively for the use of a guest."
Additionally, in State v. Cover, supra at 746, the court explained:
"A second exception in the host/guest context would be articles or belongings which would be most commonly deserving of the `high expectation of privacy' label. Illustrative of this exception is United States v. Poole, 307 F.Supp. 1185 (E.D.La. 1969). In that case, police searched Poole's closed overnight bag, which had been left in a friend's hall closet, upon receiving the consent of Poole's host. The court concluded,
`The rule which emerges is that a defendant may object to a search consented to by another where the defendant has exclusive control over a part of the premises searched or over an `effect' on the premises which is itself capable of being (and is) `searched.' `Enclosed spaces' over which a non-consenting party has a right to exclude others, whether rooms or effects, are protected. * * *' 307 F.Supp. at 1189".
The record in this case reveals that MELBERT lived at the Wilson home as a guest. He did not rent or lease the room in which he lived. In fact, the closet and dresser drawers in the room held items belonging to members of the Wilson family. MELBERT did not possess a key to the home nor did he have a special key for his room. The room did not have a lock, and in fact, everyone in the home had access to the room. Nothing in the record even suggests that the room was considered exclusively for MELBERT'S use or that members of the WILSON family were inhibited in any way by MELBERT from entering that room to retrieve items that they stored there with the possible exception of a courteous knock before entering. MELBERT was a guest in the home and by his own testimony enjoyed only limited privacy in the room. MELBERT stayed in that home completely and solely at the discretion of the WILSONS. He had no implicit or explicit right to exclude any member of the WILSON family from accessing the room, and therefore, Bobbie Wilson as owner of the home could grant permission for a search of the room. State v. Cover, supra; see also, e.g., State v. Evins, supra.
Consequently, this court holds that Bobbie Wilson could legally give her consent to search her entire home including the room in which MELBERT resided as a guest and that the search was constitutional. We find that evidence seized and taken in the search of the dresser drawers in that room was legal and admissible.
Next, we address the search and seizure of evidence from MELBERT'S boot bag. Unlike MELBERT'S room, we find that Bobbie Wilson could not grant law enforcement officials permission to search his boot bag under the circumstances of this case. In this case, even as a guest MELBERT reasonably had a high expectation of privacy in his personal effects in that room. While MELBERT did not have exclusive control over access to the room in which he was living, we find that he had every right to expect privacy over his personal effects in that room even from the owners of the home, and particularly, against intruding law enforcement officers. Under the facts of this case, we hold that a guest in the home of another who has the use of a room, albeit with limited privacy, can expect that his personal belongings in luggage, a purse, or even a boot bag, and other similar items will not be searched or rummaged through without his permission. A guest's personal belongings clearly fall with the class of things and places that both an individual and our society expects a high degree of privacy and this courts finds it to be an important privacy right worthy of protection. See generally, State v. McKinney, 637 So.2d 1120 (La. App.4th Cir.1994); State v. Cover, supra; State v. Cormier, 438 So.2d 1269 (La.App. 3d Cir.), writ granted, 443 So.2d 599 (La.1983), *744 aff'd and remanded, 453 So.2d 1202 (La. 1984).
"Any evidence produced as a result of an illegal search and seizure is tainted and thus inadmissible under the fruit of the poisonous tree doctrine." State v. Shivers, 346 So.2d 657, 661 (La.1977) (citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Silverthorne v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920)). While evidence seized as a result of an illegal search is inadmissible, there are three exceptions to that exclusionary rule, the independent source doctrine[1], the inevitable discovery doctrine, and the attenuation doctrine[2]. United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).
The inevitable discovery doctrine may be applicable, and therefore, we provide this analysis. In Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the United States Supreme Court held that unconstitutionally obtained evidence may be admitted at trial if it would inevitably have been seized by police in a constitutional manner. The court's decision was based on its belief that it is unfair to penalize the government through application of the exclusionary rule where the police would have obtained the evidence even if no misconduct occurred. The court in Garner explained that where sufficient evidence existed in a case to obtain a search warrant, though none had been obtained, the evidence would be admissible anyway since it would inevitably have been found pursuant to a search warrant. State v. Garner, 621 So.2d 1203 (La.App.4th Cir.), writ denied, 627 So.2d 661 (La.1993) (citing State v. Clark, 499 So.2d 332 (La.App.4th Cir.1986)).
The only evidence presented in this case supporting the requisite probable cause on which a search warrant may have been issued was based on the testimony of Deputy Artis. Deputy Artis stated that he received information from a confidential informant that MELBERT was in possession of a large quantity of drugs. Additionally, Deputy Artis stated that the confidential informant had provided him with information in the past that led to arrests and at least two convictions.
Before any court can allow the state to admit evidence via the inevitable discovery doctrine, it must be convinced based on the "totality of the circumstances" that probable cause existed for a court to issue a search warrant.[3] Deputy Artis's testimony at the hearing on MELBERT'S Motion to Suppress and at trial failed to establish probable cause for a court to issue a search warrant. Mindful of the need to protect a confidential informant's identity, we recognize that a law enforcement officer should not be required to reveal all of the details and circumstances concerning his contacts with confidential informant. We do not find in this case, however, that the general allegation of wrongdoing made by the confidential informant against MELBERT and the testimony of Deputy Artis that the confidential informant in question had previously provided him with information that led to *745 arrests and at least two convictions was sufficient probable cause for a court to issue a search warrant.
Arguably, the narcotics seized in the chest of drawers together with the allegations made by the confidential informant would have established probable cause for a court to issue a search warrant for the search of MELBERT'S boot bag. That additional evidence needed to establish probable cause for a search warrant to issue, however, was seized after the officers had already searched MELBERT'S boot bag. Sufficient evidence to obtain a search warrant did not exist prior to the officers search of the boot bag, and therefore, the argument that the evidence would have been inevitably discovered pursuant to a valid search warrant has no merit.
Probable cause to search for evidence exists when a reasonable fact finder has cause to believe, given the totality of the circumstances, that a fair probability exists that evidence will be found in the place to be searched. State v. Brady, 585 So.2d 524 (La.1991). Before a search warrant can be issued based on information provided by a confidential informant, Louisiana jurisprudence generally requires more than an allegation by the confidential informant of wrongdoing by the suspect and testimony by the investigating officer that the confidential informant is reliable. In addition, the confidential informant must provide at a minimum, other details peculiarly and distinctively related to the alleged illegal activity of the suspect and that information must be confirmed, corroborated, or supported by other direct or circumstantial evidence provided by the confidential informant or gathered independently by the law enforcement officer seeking the search warrant. See e.g., State v. Irby, 632 So.2d 801 (La.App.4th Cir.), writ denied, 637 So.2d 461 (La.1994); State v. Hutchinson, 620 So.2d 1205 (La.App. 3d Cir.), writ denied, 627 So.2d 661 (La.1993); State v. Knapper, 626 So.2d 395 (La.App.4th Cir.1993), writ denied, 630 So.2d 798 (La. 1994); State v. Williams, 608 So.2d 266 (La. App. 3d Cir.1992); State v. Hamilton, 572 So.2d 269 (La.App. 1st Cir.1990), writ denied, 578 So.2d 929 (La.1991); State v. Smith, 546 So.2d 538 (La.App. 1st Cir.), writ denied, 552 So.2d 393 (La.1989).
In this case, we find that the information provided by Deputy Artis's confidential informant did not provide sufficient evidence to establish probable cause on which a search warrant would have been issued. Consequently, we hold that the evidence seized in MELBERT'S boot bag is not admissible under the inevitable discovery doctrine.

Assignments of Error Nos. 3
In assignment number three, MELBERT alleges that the trial court erred in failing to rule on his pretrial Motion to Suppress Arrest filed February 4, 1993. We find that MELBERT waived his right to a ruling on that motion before trial when he failed to object prior to the commencement of trial. The purpose of the contemporaneous objection is to put the trial court on notice of the alleged irregularity so that it may cure the problem and to prevent a defendant from gambling on a favorable verdict, and then resorting to appeal on errors that might easily have been corrected by objection. State v. Morris, 429 So.2d 111 (La.1983); see also, La.Code Crim.P. art. 841.

Conclusion
MELBERT was a guest in the home of the Wilsons and only had a limited right of privacy to the room. We find that the permission given to law enforcement officers by the owner for the general search of his room and its furnishings was legal and the evidence resulting from that search of the chest of drawers is admissible. We find, however, that the owner of the home could not give law enforcement officers permission to search the private effects of her guest.
For the foregoing reasons, the trial court's ruling on the motion to suppress is affirmed to the extent that it allows admission of the evidence taken from the chest of drawers, and reversed to the extent that it allowed the introduction of the evidence seized from the defendant's boot bag. The conviction and sentence are vacated and this case is remanded for a new trial consistent with the rulings of this opinion.
*746 CONVICTION and SENTENCE VACATED and REMANDED.
NOTES
[1] If police knowledge of the location of the evidence had arisen from an independent source, then the courts have held under the independent source doctrine that the initial violation of the person's rights should not put him beyond the law's reach if his guilt can be established by evidence unconnected with or untainted by the initial violation of his rights. Wong Sun, supra.
[2] The attenuation doctrine provides that tainted evidence may be admitted if the prosecution can show that the connection between the illegal conduct and the evidence in question has become so attenuated to dissipate the taint, i.e, that it cannot be said to be a product of the illegal conduct. See, Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).
[3] "In dealing with search warrants based on confidential tips, the Supreme Court has refined the two-pronged test [footnote omitted] of veracity and basis of knowledge into a `totality of the circumstances' test invoking `whether, given all of the circumstances set forth in the affidavit before [the magistrate], including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' Illinois v. Gates, 462 U.S. 213 [238], 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). An allegation of past reliability is not necessarily a sine qua non to sufficiency of probable cause as long as a common sense reading of the affidavit supports the conclusion that the informant is credible and his information is reliable. State v. Clay, 408 So.2d 1295 (La.1982)." State v. Williams, 608 So.2d 266, 271 (La.App. 3d Cir.1992).