| .MURRAY, Judge.
Defendant, Willie Barnes, appeals his conviction of attempted possession of heroin and his subsequent adjudication and sentencing as a second felony offender. For the reasons that follow, we reverse defendant’s conviction and sentence.
On June 14, 1999, defendant was charged with possession of heroin, a violation of La. R.S. 40:966. He pled not guilty, and the trial court denied his motion to suppress the evidence. Following a mistrial due to a hung jury, defendant was retried, and on June 12, 2000, he was convicted by a twelve-person jury of attempted possession of heroin. After a multiple bill and sentencing hearing, the trial court found defendant to be a second *653 offender and sentenced him to five years at hard labor without benefit of parole, probation, or suspension.[1] Defendant appeals his conviction and sentence on the sole basis that the trial court erroneously admitted irrelevant and prejudicial photographs.
| .FACTS:
On March 18, 1999, New Orleans police officers Brian Lampard and David Carter were on proactive patrol in a marked police car, investigating a hotline complaint reporting narcotics activity in the 2100 block of Andry Street. The officers observed the defendant standing astride a black mountain bike in front of 2124 Andry Street. When he saw the officers, defendant retrieved an object from his right pants pocket, discarded it, and ran into the residence at 2124 Andry Street. Believing the defendant had just discarded narcotics, the officers stopped their vehicle. Officer Lampard retrieved the object from the ground where defendant had dropped it, while Officer Carter pursued the defendant. Upon • discovering that the object was a tin foil packet containing what appeared to be heroin, Officer Lampard ran to the backyard of the house in an attempt to intercept the defendant, whom he heard running through the house. Officer Carter was unable to follow the defendant into the house because the defendant had slammed and locked the iron gate behind him. Officer Lampard was unsuccessful in apprehending the defendant, who had apparently exited the house before the officer reached the backyard. In the meantime, Officer Carter knocked on the front door and spoke to the resident, Willie Wilson, who said he was the defendant’s father. Officer Lampard returned to the front of the house, and Mr.: Wilson allowed the officers to search the defendant’s bedroom. In the bedroom, the officers found three photographs of defendant. Mr. Wilson gave the officers the defendant’s name and date of birth, which the officers used to obtain an arrest warrant for the defendant. _J¿According to the testimony of defendant’s father, which was uncontradicted at trial, the defendant later turned himself in.
Officer Harry O’Neal, a criminalist, testified that the substance in the foil packet tested positive for heroin.
Wesley Barnes, the defendant’s younger brother, testified that he was outside in his front yard when the police pulled up. He said one of the officers got out of the vehicle and searched a truck that was parked in front of the house. The witness said the officer was wearing rubber gloves, and was moving some tires around in the back of the truck. He saw the officer put something in the back of the truck and then take something out. When the officers attempted to question his brother, who had pulled up in front of the house on his bike, the defendant ignored them and went into the house; the police followed him. Wesley Barnes said, he was facing his brother, but did not see him throw anything down on the ground.
Willie Wilson, the defendant’s father, stated that the officers told him only that they wanted to enter the house to look for the person who had just run through it. He said he consented to the search because the officers told him if he did not, they would get a search warrant and mess .up the house. He admitted having told the officers that if there were drugs in the house, he wanted them out. He also ad- *654 raitted having prior felony convictions, and stated that the defendant had turned himself in because he was afraid of the police.
I .ASSIGNMENT OF ERROR
In his sole assignment of error, defendant contends that he was unfairly prejudiced by the admission into evidence of two photographs, which the police took from his bedroom. One of the photographs depicts the defendant standing outdoors holding a rifle; the other shows defendant with a handful of money spread out like a fan. • The State contends that these photographs were relevant to prove the defendant’s identity. Defendant argues that the photographs were irrelevant because his identity was not at issue; alternatively, he argues that the photographs should have been excluded because their probative value was clearly outweighed by their highly prejudicial nature.[2] Finally, defendant argues, as he did at trial,, that the photographs should have been cropped to exclude the prejudicial elements before being admitted.[3]
According .to the La. C.E. art. 402, all relevant evidence is admissible, and evidence which is not relevant is not admissible. La. C.E. art. 401 defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Finally, evidence, although relevant, “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by | Kconsiderations of undue delay, or waste of time.” La. C.E. art. 403. In the case of photographic evidence, any photograph that illustrates any fact, sheds light upon any fact or issue in the case, or is relevant to describe the person, place or thing depicted is generally admissible, provided its probative value outweighs any prejudicial effect. State v. Jackson, 00-1014, p. 11 (La.App. 5 Cir. 12/13/00), 778 So.2d 23, 31, citing State v. Glynn, 94-0332 (La.App. 1 Cir. 4/7/95), 653 So.2d 1288.
In the instant case, identity was not at issue; the defendant did not dispute that he was the person who ran into the residence at 2124 Andry, that he lived at that residence, or that he was the person depicted in the photographs found in his bedroom. His younger brother testified that the defendant went into the house and was pursued by the police. The defendant’s father showed the . police officers into the defendant’s bedroom, acknowledged that the pictures found there were of his son, and gave the officers the defendant’s name and date of birth. What was disputed by the defense, however, was the officers’ assertion that the defendant had dropped the tin foil package of heroin picked up by Officer Lampard. Officer Lampard identified the defendant in court as the person he saw drop the object; the officer stated that he made eye contact with the defendant, at which point the defendant began moving, and the officer watched him reach into his pocket and discard the object, later determined to be *655 heroin. The defendant’s younger brother, however, testified that he did not see the defendant throw anything to the ground, and the defense attorney’s cross examination of Officer Lampard attempted to | fishow that the object he picked up might not have been the same one he saw defendant throw down. Therefore, the pivotal issue in the case turned on whether the jury believed the testimony of the two police officers as to what occurred, not as to the identity of the defendant.
Under these circumstances, the photographs of defendant were not relevant, as they tended to prove only that the defendant lived in the house that he ran into after he saw the police, which fact was not at issue in the trial. The State argues, however, that it bears the burden of proving every element of the crime charged beyond a reasonable doubt, including the identity of the defendant. The State further argues that even though the officers identified the defendant in court as the person they had seen discard the heroin some fifteen months before, the State was entitled to bolster its case by showing that the officers had also recognized the defendant in the photographs found in his room and had verified his identity at the time the incident occurred. This argument ignores the fact that this testimony could have been presented without the actual photographs being admitted and shown to the jury.
Even assuming the photographs were relevant, however, we find that their probative value was substantially outweighed by them prejudicial effect in the form in which they were admitted. One photograph depicts the defendant standing alone holding a rifle, which is pointed up in the air behind his shoulder. The other photograph shows the defendant posing with three other men in front of a painted backdrop showing cars and night clubs; the defendant is holding money spread into |7a fan shape in one hand, while the middle finger of his other hand is raised to the camera, a gesture commonly referred to as “giving someone the finger.” The photographs are not benign, as the State suggests; rather, they clearly have a negative connotation. Moreover, as the State’s ostensible purpose was merely to show identity, this purpose could have been accomplished by cropping the prejudicial elements out of the pictures so that only the defendant’s face remained. The defendant’s request that the photographs be cropped represented a reasonable alternative that might have accommodated both the rights of the State and of the defendant in this case. Under the circumstances, we conclude that the trial court erred in admitting the photographs.
Despite the erroneous admission of evidence, however, the verdict will not be reversed if the reviewing court determines that the error was harmless beyond a reasonable doubt. State v. Harris, 97-0300, p. 3, (La.4/14/98), 711 So.2d 266, 269. “Reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to the verdict.” Id., quoting State v. Wille, 559 So.2d 1321, 1332 (La.1990). Factors to be considered include the importance of the evidence to the State’s case, the presence or absence of additional corroboration of the evidence, and the overall strength of the State’s case. Id.
Considering this standard, we are not convinced the erroneously admitted photographs did not contribute to the verdict in the instant case. We have already noted that the photographs were not important to the State’s case, or even relevant, | sbecause the defendant’s identity was not at issue. Moreover, this evidence of identity was corroborated by the testimony of Officer Lampard, who saw the defendant’s *656 face and identified him in court. Finally, two factors — that the defendant’s first trial resulted in a hung jury, as well as that, in this, his second trial, defendant was charged with possession of heroin, but found guilty of attempted possession only — indicate the jury’s decision may have been a close one. The photographs show the defendant in a negative light, indicating an association with guns and money, respectively, both of which might be considered as attributes of a drug user. If the photographs raised this connotation in the minds of the jurors, even despite the limiting instruction given by the trial judge,[4] their admission cannot be considered harmless error. Because there exists a reasonable possibility that the erroneous admission of this evidence contributed to the verdict, we reverse the defendant’s conviction and sentence.
REVERSED.

. Our review of the record reveals an error patent in the sentencing of the defendant. While La. R.S. 40:966 and 15:529.1 prohibit the benefits of probation and suspension of sentence, there is no such prohibition against parole. However, our reversal of his conviction makes correction of this error in defendant's sentence moot.

. The defendant filed a motion in limine to exclude the admission of the photographs, which was denied by the trial court. The defendant sought emergency supervisory writs of review from that ruling. In writ 2000-K-1118, dated May 16, 2000, this court declined to exercise its supervisory jurisdiction on the basis that defendant had an adequate remedy on appeal. On May 24, 2000, the Louisiana Supreme Court denied defendant’s application for supervisory writs to that Court in writ 2000-K-1382.

. Although the trial judge declined to exclude or crop the photographs, he did instruct the jury to consider them as evidence of identity only.

. See footnote 3, supra.