h STEVEN R. PLOTKIN, Judge.
The defendant raises multiple issues in this appeal of armed robbery and simple robbery convictions. The first issue is whether the trial court erred in denying the defendant’s motion to suppress the evidence. The second issue is if the trial court erred when it admitted a photograph of the defendant into evidence. The next issue is whether the State failed to preserve potentially useful evidence. The final issue is whether there was probable cause to arrest the defendant. For the reasons below, we affirm the ruling of the trial court.
PROCEDURAL HISTORY
The defendant, Derrick Singleton, was charged by bill of information with fifteen counts of armed robbery in violation of La. R.S. 14:64, three counts of attempted armed robbery in violation of La. R.S. 14:(27) 64, and one count of being a convicted felon in possession of a weapon in violation of La. R.S. 14:95.1.[1] The defendant pled not guilty to all charges at his ^.arraignment. Singleton filed suppression and discovery motions and suppression hearings were held. The trial court found probable cause and denied defendant’s motions to suppress identification and evidence. The State elected to try defendant on six counts of armed robbery (counts one, two, three, four, five and ten) and three counts of attempted armed robbery (counts eleven, twelve and thirteen).[2] After a jury trial, the defendant was found guilty as charged on five counts of armed robbery (counts one, two, four, five and ten) and guilty of three counts of attempted simple robbery (counts eleven, twelve and thirteen). The trial court sentenced the defendant to serve three years at hard labor on each count of attempted armed robbery and fifty years at hard labor without benefit of probation, parole or suspen *1188 sion of sentence on each conviction of armed robbery. All sentences were to be served concurrently. The State filed a multiple bill of information alleging defendant to be a fourth felony offender. The trial court adjudicated the defendant to be a multiple offender. The trial court vacated the sentence imposed on count one and resentenced defendant to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.
STATEMENT OF FACTS
Detective Jay Jacquet testified that between 10:00 a.m. and 11:00 a.m. on March 30, 1999, he was patrolling the Sixth District when he was contacted to investigate a robbery which had occurred at the intersection of Second Street and Magazine Street. Sergeant Carbonette was working a | apaid detail at Camp Street and Second Street when he was approached by three women who stated they had been the victims of an armed robbery. The officer broadcast that a robbery had occurred. Detective Jacquet stated that he was the first officer on the scene and took statements from the three victims, Donna Carr, Megan Lourick and Kim Steverson.
Donna Carr, Megan Lourick and Kim Steverson testified that they were visiting New Orleans on March 30, 1999. The three women were walking on Magazine Street when a man and a woman approached them. The man held a gun out and told them to give up their money. Donna Carr gave the man her wallet. Megan Lourick and Kim Steverson took their money out of their purses and gave the money to the man. After the perpetrators left the scene, the three women ran down a side street and saw a police officer to whom they reported the robbery. Kim Steverson identified the defendant in a photographic lineup and at trial as the person who held the gun and robbed them.
Madeline Trapp and Sara Erickson testified that they were visiting New Orleans on April 4, 1999. They were walking on St. Ann Street when two people, one of whom was carrying a gun, approached them. The person with the gun put the gun to Ms. Trapp’s stomach and told the women to give up their money. Ms. Trapp gave them her purse, which contained a red patent leather wallet and a camera. Ms. Erickson gave them her wallet. After the perpetrators left the area, the two women walked to a nearby restaurant and called the police. The two women gave the police statements and descriptions of the two assailants. A short time later, the police returned to the restaurant and asked the women if they could identify an individual as one of the perpetrators. Both women identified one of the perpetrators in the one-on-one identification. However, the person identified was not the ^perpetrator who carried the gun. Both Ms. Trapp and Ms. Erickson identified the defendant in a photographic lineup and at trial as the perpetrator who handled the gun.
Detective Gary Dupart participated in the investigation of an armed robbery, which occurred on April 10, 1999 at 1626 St. Andrew Street. Detective Dupart spoke with the victim, Irene Huff. She testified that on April 10, 1999, she lived on St. Andrew Street. At approximately 11:30 p.m. on April 10th, she was standing near her front door, looking for her keys, when two people approached her. One of them pulled a gun and told her to give him her money. Ms. Huff took her money out of her purse and gave it to the assailant who then left the scene. Ms. Huff assisted in composing a composite sketch of the person who held the gun. Once the sketch was complete, Detective Dupart distributed the sketch throughout the police department. The officer stated that Ms. Huff identified the defendant in a photo *1189 graphic lineup as the person who held the gun on her.
Juli Gordon, Susan Troldahl and Beth Kasinkas were visiting New Orleans on April 11, 1999. At approximately 12:00 p.m. on April 11th, they were walking on Magazine Street when a man and a woman approached them. The man demanded their money. Juli Gordon said no and told her friends to run. They ran up a side street to St. Charles Avenue. When the three women reached St. Charles Avenue, Ms. Troldahl and Ms. Kasinkas told Ms. Gordon that the man had a gun. The three women decided to have lunch and then returned to their hotel. When they returned to the hotel, they told the concierge about the incident. The concierge called the police and reported the incident. The women met with the police and gave statements. Beth Kasinkas identified the defendant in a photographic lineup and in court as the perpetrator who attempted to rob them.
|sOn April 15, 1999, Detective Carter and Officers Vappie and Williams responded to a dispatch that two individuals wanted for armed robbery were staying at 3319 South Liberty Street, apartment number 3. The officers were also told that a gun was in a black purse in the residence. When the officers arrived at the apartment, they spoke with Ms. Reese, the person who was renting the apartment. She gave the officers permission to enter and‘ search the apartment. The officers observed the defendant lying on the sofa and Ms. Patterson sitting on a chair. As defendant and Ms. Patterson matched the description of the individuals wanted, they were handcuffed, given Miranda warnings, taken to the steps outside the apartment, and their names were run through the NCIC computer. The officers learned that Ms. Patterson had an outstanding municipal warrant and the defendant was a convicted felon. The defendant and Ms. Patterson were then placed under arrest.
Officer Carter asked Ms. Reese if she would be willing to sign a consent to search form. The officer stated that he did not threaten Ms. Reese or offer her anything of value in exchange for signing the form. Ms. Reese agreed to sign the document. At that time, the officers found two purses on the sofa where the defendant was located. At the suppression hearing, Officer Carter testified that he asked Ms. Reese if the purses belonged to her, and she stated that they did not belong to her. The officer then asked Ms. Patterson, who was on the steps outside the apartment, if either of the two purses belonged to her. She stated that neither purse belonged to her. When the officer opened the black purse, he found a revolver, a camera, and a photograph of the defendant holding a gun, along with personal papers that | ^belonged to Ms. Patterson.[3] At that point, Ms. Patterson told the officers “Yes. Some of the stuff in the purse is mine. However, everything in the purse is not my purse.”
Darlene Patterson testified at trial that she and the defendant had been together for twelve years and had one child together. She admitted that she and the defendant committed the armed robberies of Donna Carr, Megan Lourick, Kim Stever-son, Madeline Trapp, Sara Erickson, and Irene Huff, and attempted to rob Juli Gordon, Susan Troldahl, and Beth Kasinkas. She acknowledged that she pled guilty to eleven counts of armed robbery, three counts of attempted aimed robbery and two counts of possession of stolen property and was sentenced to five years at hard *1190 labor on each count. She stated that there was no deal between herself and the State.

ERRORS PATENT

A review of the record for errors patent reveals none.

COUNSEL AND PRO SE ASSIGNMENT OF ERROR NUMBER 1

In these assignments, the defendant argues that the trial court erred when it denied defendant’s motion to suppress evidence. The defendant contends that the search of Ms. Patterson’s purse was done without a warrant and thus, was illegal.
A search warrant is not necessary when lawful consent is given for a search of the premises. State v. Franklin, 95-1876, p. 5 (La.1/14/97), 686 So.2d 38, 41. The burden is on the State to prove that such consent to search was given freely and voluntarily. State v. Edwards, 434 So.2d 395, 397 (La.1983). In State v. Irby, 93-2265 p. 5 (La.App. 4 Cir. 1/13/94), 632 So.2d 798, 800, this Court stated:
|7In order to rely upon the consent exception to the warrant requirement, the State must prove that the consent was freely and voluntarily given. See State v. Wilson, 467 So.2d 503 (La.1985), cert den. Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Brown, 598 So.2d 565 (La.App. 4th Cir.1992), writ den. 605 So.2d 1092 (1992); State v. Valenzuela, 590 So.2d 89 (La.App. 4th Cir.1991) writ den. 593 So.2d 380 (1992), cert. den. Valenzuela v. Louisiana, [506] U.S. [843], 113 S.Ct. 130, 121 L.Ed.2d 84 (1992). The volun-tariness of consent is a question of fact to be determined by the district court under the facts and circumstances of each case, and its determination is entitled to great weight on review. Wilson; State v. Ossey, 446 So.2d 280 (La.1984), cert. den. Ossey v. Louisiana, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); Valenzuela.
See also State v. Nogess, 98-0670 (La.App. 4 Cir. 3/3/99), 729 So.2d 132; State v. O’Shea, 97-0400 (La.App. 4 Cir. 5/21/97), 696 So.2d 115. In the present case, the officers had consent from Ms. Reese to search “the two-bedroom apartment, wood wall apartments, and its contents, which is owned or controlled by me.” The officers testified that this consent was voluntarily given and that she was not threatened in any manner.
The defendant cites Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) for the proposition that the search incident to arrest exception does not apply to this ease since the purse was not within the “immediate control” of Ms. Patterson. This doctrine is not applicable to the instant case since Ms. Patterson had disclaimed the property at issue. When both Ms. Reese and Ms. Patterson told the officers that the purse did not belong to them, they abandoned the property and the officers were free to search its contents.
The defendant relies on State v. Melbert, CR-140 (LaApp. 3 Cir. 11/30/94), 649 So.2d 740, a case in which the court held that the person in control of the apartment could not grant law enforcement officials ^permission to search the defendant’s boot „ bag. In respect to a guest’s privacy rights, the court stated:
Under the facts of this case, we hold that a guest in the home of another who has the use of a room, albeit with limited privacy, can expect that his personal belongings in luggage, a purse, or even a boot bag, and other similar items will not be searched or rummaged through without his permission.
The instant case is distinguishable from Melbert in that here Ms. Patterson disclaimed the property by telling the officers *1191 that neither of the purses belonged to her. By denying ownership of the purse Ms. Patterson effectively abandoned the property. Also, in this case Ms. Patterson had been handcuffed and given Miranda warnings prior to the search of the purse. Only after the purse was abandoned and disclaimed by Ms. Patterson did the police have the right to search the purse without a warrant. Thus, the seizure of the gun, camera, and film in the camera was proper. The trial court did not err when it denied the defendant’s motion to suppress evidence.

COUNSEL’S ASSIGNMENT OF ERROR NUMBER 2

The defendant also argues that the trial court erroneously allowed the State to admit a prejudicial photograph of the defendant into evidence. The photograph, which was taken using a camera stolen from one of the armed robbery victims, showed the defendant holding a gun.
According to La. C.E. art. 402, all relevant evidence is admissible, and evidence that is not relevant is not admissible. La. C.E. art. 401 defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Finally, evidence, although relevant, “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” La. C.E. art. 403. In the case of photographic evidence, any photograph that illustrates any fact, sheds light upon any fact or issue in the case, or is relevant to describe the person, place or thing depicted is generally admissible, provided its probative value outweighs any prejudicial effect. State v. Jackson, 2000-1014, p. 11 (La.App. 5 Cir. 12/13/00), 778 So .2d 23, 31, writ denied, 2001-0162 (La.11/21/2001), 802 So.2d 629, citing State v. Glynn, 94-0332 (La.App. 1 Cir. 4/7/95), 653 So.2d 1288.
In State v. Barnes, 2000-2127 (La.App. 4 Cir. 5/23/01), 790 So.2d 651, 654-657, writ denied, 2001-1874 (La.3/8/02), 810 So.2d 1150, identity was not at issue. The defendant did not dispute that he was the person who ran into the residence at 2124 Andry Street, that he lived at that residence, or that he was the person depicted in the photographs found in his bedroom. His younger brother testified that the defendant went into the house and was pursued by the police. The defendant’s father showed the police officers into the defendant’s bedroom, acknowledged that the pictures found there were of his son, and gave the officers the defendant’s name and date of birth. What was disputed by the defense, however, was the officers’ assertion that the defendant had dropped a tin foil package of heroin picked up by one of the police officers. Therefore, the pivotal issue in the case turned on whether the jury believed the testimony of the two police officers as to what occurred, not as to the identity of the defendant. This Court stated:
“Under these circumstances, the photographs of defendant were not relevant, as they tended to prove only that the defendant lived in the house that he ran into after he saw the police, which fact was not at issue in the trial.... Even assuming the photographs were relevant, however, we find that their probative value was substantially outweighed by their prejudicial effect in the form in which they were admitted. One photograph depicts the defendant standing alone holding a rifle, which is pointed up in the air behind his shoulder. The other photograph shows the defendant posing with three other men in |infront *1192 of a painted backdrop showing cars and night clubs; the defendant is holding money spread into a fan shape in one hand, while the middle finger of his other hand is raised to the camera, a gesture commonly referred to as “giving someone the finger.” The photographs are not benign, as the State suggests; rather, they clearly have a negative connotation. Moreover, as the State’s ostensible purpose was merely to show identity, this purpose could have been accomplished by cropping the prejudicial elements out of the pictures so that only the defendant’s face remained. The defendant’s request that the photographs be cropped represented a reasonable alternative that might have accommodated both the rights of the State and of the defendant in this case. Under the circumstances, we conclude that the trial court erred in admitting the photographs.”
Barnes, 2000-2127, p. 4, 790 So.2d at 655.
In State v. Snyder, 98-1078 (La.4/14/99), 750 So.2d 882, the defendant complained of the admission of a series of photographs, which depicted him in a variety of martial arts poses. Some photographs depicted the defendant in a martial arts stance holding a knife-like weapon. Specifically, the defendant contended that the photographs were erroneously admitted into evidence because they were remote in time, irrelevant and were introduced solely to prejudice defendant and show that the defendant was a “bad guy.” The State, on the other hand, argued that the photographs were particularly relevant considering the suddenness and savagery of the attacks, the fact that the weapon used was some kind of double-edged knife and defendant’s statement that he was “not familiar with, ha, with knives in a way.” The State argued the photographs were admissible not only to refute defendant’s statement that he was not familiar with knives, but also to show his obvious skill in using them.
In Snyder, the court held that although the photographs were arguably relevant even in light of the fact they were taken more than ten years before the crime occurred, their potential to prejudice the jury was certainly present. “Considering the fact that defendant was charged with the brutal stabbing of his wife and her male companion, photographs depicting |nhim in an ‘attack’ position with what look like knives in his hands could give the jury a picture of him as a ‘bad man’ and someone likely to commit such a crime. Thus, the probative value of the photographs was slight when compared to their tremendous potential to inflame the jury.” Snyder, 98-1078, p. 4, 750 So.2d at 844. The court in Snyder concluded that in light of the overwhelming evidence against defendant, the erroneous admission of the photographs was unimportant in relation to the entire body of evidence presented at trial. The court held that although the trial court erred by admitting the photographs, the error was harmless.
To determine whether an error is harmless, the proper analysis is “not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.” State v. Bourque, 622 So.2d 198, 241 n. 20 (quoting Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)).
In the case at bar, the photograph of the defendant was relevant. The photograph, developed from film in the stolen camera, was taken using the camera stolen from one of the victims. Identification was an issue in this case. The pictures are more probative than prejudicial because they identify the defendant as the perpetrator *1193 of the armed robberies. Further, if there was any error, it was harmless. The victims positively identified the defendant as the person who robbed or attempted to rob them. Additionally, Patterson testified that she and the defendant participated in the armed robberies. Thus, this assignment of error is without merit.

hiPRO SE ASSIGNMENT OF ERROR NUMBER 2

The defendant, pro se, suggests that the State failed to preserve potentially useful evidence. The defendant’s argument centers on the fact that the gun was lost while in the evidence room. The police officers testified that the evidence was logged in the evidence room and remained there until someone requested the evidence. The evidence has not been located. The defendant contends that he intended to use the gun as evidence in his defense. He suggests that he intended to introduce evidence that no latent prints were found on the weapon. However, any such evidence concerning the lack of latent prints on the weapon could have been introduced without the gun. In addition, there was no testimony from the police officers that the weapon was examined for fingerprints. Thus, this assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 3

The defendant also contends that he was arrested without probable cause. A warrantless arrest must be based on probable cause. Probable cause exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).
It is not a prerequisite for a finding of probable cause that the police know at the time of the arrest that a particular crime has definitely been committed. While knowledge of the commission of a crime is frequently an important factor in the determination of probable cause, probable cause may exist when the commission of a crime has not been definitely established. It is sufficient that it be reasonably probable that a crime has been committed 113under the totality of the known circumstances. State v. Simms, 571 So.2d 145 (La.1990). While it takes more and better evidence to provide probable cause when the police do not know a crime has been committed, probable cause is to be judged by the probabilities and practical considerations of everyday life on which average men, particularly average police officers, can be expected to act. State v. Drott, 412 So.2d 984 (La.1982); State v. Hebert, 95-1645 (La.App. 3 Cir. 6/5/96), 676 So.2d 692. Probable cause for an arrest does not rest on the officer’s subjective beliefs or attitudes but turns on a completely objective evaluation of all of the circumstances known to the officer at the time of his challenged action. State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879.
In the present case, the police officers received information that the defendant had been involved in a series of armed robberies. Detective Andre Carter stated that the officers received a dispatch about two people wanted for armed robbery. The officers were given descriptions of the two suspects and the address where they could be found. When the officers arrived at the apartment, the apartment owner, Ms. Reese, gave the officers permission to enter and search her residence. The officers found the defendant and Patterson in the apartment, both of whom matched the descriptions of the armed robbery assailants. The defendant and Ms. Patterson were subsequently detained. Defendant’s *1194 name was run through the NCIC computer and it was learned that the defendant was a convicted felon. Then the officers placed the defendant under arrest. Thus, this assignment is without merit.

CONCLUSION

Accordingly, we find that the trial court did not err when it denied the defendant’s motion to suppress evidence. The trial court properly admitted [14the photograph of the defendant into evidence. The officers had probable cause to arrest the defendant.
Therefore, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Darlene Patterson was also charged in the same bill of information with twelve counts of armed robbery (counts one, two, three, six, seven, eight, nine, ten, fourteen, fifteen, sixteen and seventeen) and three counts of attempted armed robbery (counts eleven, twelve and thirteen). Patterson pled guilty as charged to all counts on February 25, 2000 and was sentenced to five years at hard labor without benefit of probation, parole or suspension of sentence on each count, with the sentences to be served concurrently.

. Count one charged defendant with the armed robbery of Kim Steverson. Count two charged defendant with the armed robbery of Donna Carr. Count three charged defendant with the armed robbery of Megan Lourick. Count four charged defendant with the armed robbery of Madeline Trapp. Count five charged defendant with the armed robbery of Sara Erickson. Count ten charged defendant with the armed robbery of Irene Huff. Count eleven charged defendant with the attempted armed robbery of Juli Gordon. Count twelve charged defendant with the attempted armed robbery of Susan Troldahl. Count thirteen charged defendant with the attempted armed robbery of Beth Kasinkas.

. When the film was subsequently developed it produced more photographs of the defendant holding a gun as well as pictures of one of the victims.