974 So.2d 65 (2007)
STATE of Louisiana
v.
Antoine DUPLESSIS.
No. 2007-KA-1005.
Court of Appeal of Louisiana, Fourth Circuit.
December 19, 2007.
*67 Eddie J. Jordan, Jr., District Attorney, Alyson Graugnard, Assistant District. Attorney, New Orleans, LA, for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY).
PATRICIA RIVET MURRAY, Judge.
This is a criminal case. The defendant, Antoine Duplessis, appeals his conviction and sentence for possession of cocaine. The principal issue on appeal is whether Mr. Duplessis' motion to suppress the evidence  the cocaine  was erroneously overruled. Finding no error, we affirm.

STATEMENT OF THE CASE
On November 14, 2006, Mr. Duplessis was charged by bill of information with possession of cocaine, in violation of La. R.S. 40:967(C)(2). On December 6, 2006, Mr. Duplessis pled not guilty at his arraignment. On January 5, 2007, a hearing on Mr. Duplessis' motion to suppress the evidence was begun and continued until January 11, 2007. Following the hearing, the trial court granted the motion to suppress the evidence.
On January 29, 2007, another panel of this court granted the State's writ application and reversed the trial, court's ruling on the motion to suppress.[1] Mr. Duplessis's application for supervisory writs was denied by the Louisiana Supreme Court.[2]
On May 1, 2007, a bench trial was held, and Mr. Duplessis was found guilty as charged. After Mr. Duplessis waived all delays, the trial court immediately sentenced him to serve thirty months at hard labor with credit for time served. This appeal by Mr. Duplessis followed.

STATEMENT OF FACTS
On the evening of May 31, 2006, New Orleans Police Officer Robert Long and his partner, Officer Launey Beckham, were involved in an on-going investigation at the Voo Doo Bar on North Rampart Street. The officers were dressed in plain clothes and were conducting surveillance inside the bar in preparation for the execution of a search warrant. The bartender was suspected of selling narcotics and hiding the narcotics inside a compact disc case that he kept behind the bar. After Officers Long and Beckham observed the bartender engaged in an apparent drug transaction, they alerted the other officers who were waiting to execute the warrant. When the other officers entered the bar, Officers Long and Beckham identified themselves as police officers and assisted the other officers in detaining the patrons in the bar. The exact number of patrons present in the bar was approximated to be between four, according to Officer Long, and fifteen, according to Officer Beckham and Sergeant Christopher Hart. Mr. Duplessis was one of those patrons. He had been sitting at the bar the entire time the officers were there, and Officer Long had observed a blue knapsack that was on the bar near where Mr. Duplessis was sitting.
The officers, ordered all the patrons to show their hands for safety and to cooperate during the investigation. Officer Long detained Mr. Duplessis and asked him to *68 place his hands where they could be visible. Mr. Duplessis and all other patrons were then patted down for weapons. Officer Long stated that the bar patrons were not allowed to leave.
Officer Long asked the patrons, including Mr. Duplessis, if the blue knapsack belonged to them. All the patrons, including Mr. Duplessis, denied ownership of the knapsack. Officer Long then opened the knapsack. Inside of it, he found two forms of identification with Mr. Duplessis' name and picture on them, sixteen bags of powder cocaine, a bag of marijuana, and easy wider rolling papers. Officer Long then arrested Mr. Duplessis and conducted a search incident to arrest. Nothing was found on Mr. Duplessis during that search. Officer Long acknowledged on cross-examination that he never saw Mr. Duplessis touch the knapsack or exchange any type of item with the bartender.
Officer Beckham testified that the officers believed the bartender was hiding narcotics in a closet behind the bar. He further testified that the knapsack was within arms reach of the bartender. Officer Beckham acknowledged that all the patrons in the bar were detained and their names were run through the police computer. He admitted that the patrons were lined up against the wall furthest from the bar with their backs to the bar. According to Officer Beckham, some of the patrons were handcuffed. He explained that not all the patrons were handcuffed because there were not enough handcuffs. As noted above, Officer Beckham estimated that there were fifteen patrons in the bar. Officer Beckham testified that Officer Long asked the patrons, including Mr. Duplessis, about the ownership of the knapsack after the patrons were detained and handcuffed.
Sergeant Hart, the supervisor of the unit handling the investigation, was on the scene during the execution of the search warrant. Sergeant Hart testified that Officers Beckham and Long had observed the bartender, who was the subject of the search warrant, engage in a narcotics transaction that evening. However, the person who purchased the narcotics was not arrested because the officers were involved in surveillance. Sergeant Hart testified that narcotics and a firearm were located in the bar and that Officer Long informed him that narcotics were found in the knapsack.
The parties stipulated that the criminalist, William Giblin, tested the substances that were found in the knapsack and found them to be positive for cocaine.

ERRORS PATENT
A review of the record for errors patent reveals none.

DISCUSSION
Mr. Duplessis asserts two assignments of error.
First, he contends that the trial court failed to address him concerning his waiver of his right to a jury trial.
A defendant may waive his right to a jury trial and elect to be tried by the judge. La.C.Cr.P. art. 780(A)(providing that "a defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge.") Although the waiver generally is entered at arraignment, the trial court may accept a waiver of a jury trial at any time before the trial begins. La.C.Cr.P. art. 780(B). The waiver is valid only if the defendant acted voluntarily and knowingly. State v. Kahey, 436 So.2d 475, 486 (La. 1983). The waiver must be express; it can never be presumed. Id. The record must show a knowing and intelligent waiver. *69 State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 606. Although the trial court must determine if the defendant's waiver is knowing and intelligent, that determination does not require a Boykin-like colloquy. State v. Rideau, 05-0462, p. 30 (La.App. 4 Cir. 12/6/06), 947 So.2d 127, 144-45 (citing State v. Frank, 549 So.2d 401 (La.App. 3rd Cir.1989)).
In this case, the supplement to the record reveals that the trial court addressed Mr. Duplessis concerning his waiver of a jury trial. The transcript indicates that the trial court advised Mr. Duplessis of his right to a jury trial as well as his right to Waive that right. The trial court then asked him if he understood his rights and had discussed his rights with his counsel. Mr. Duplessis responded affirmatively to both questions. Based on the colloquy that is part of the record, we find that the trial court adequately advised Mr. Duplessis of his right to a jury trial and that he knowingly waived his right. We thus find this assignment of error unpersuasive.
Mr. Duplessis' second assignment of error is that this court should reconsider its prior ruling on his motion to suppress evidence  the cocaine  given the additional evidence presented at trial. The additional evidence was provided by the trial testimony of Officer Beckham and Sergeant Hart, who did not testify at the motion hearing. They testified that the patrons were not only detained and questioned, but also handcuffed and made to stand against the wall or the bar with their hands on the wall or bar while searched. Mr. Duplessis stresses that as a result of the officers requiring the patrons to move, he was forced to leave his knapsack at the bar, and he was not sitting next to it when he was questioned about it. Although the State acknowledges that additional evidence was presented at trial regarding the circumstances surrounding the execution of the warrant, it contends this evidence does not dictate a different result.
"Pretrial determination by the appellate court of the admissibility of evidence does not absolutely preclude a different decision on appeal if after trial it is apparent that the determination was patently erroneous and produced unjust results." State v. Decuir, 599 So.2d 358, 360 (La.App. 3rd Cir.1992)(citing State v. Ondek, 584 So.2d 282 (La.App. 1st Cir. 1991)); see also State v. Fontenot, 550 So.2d 179 (La.1989). In our previous pre-trial decision, we found that Mr. Duplessis had abandoned the knapsack before the officers searched it. In so finding, we reasoned that "[o]nce the defendant disclaimed ownership of the blue bag, effectively abandoning it, the police had a right to search it without a warrant." In support, we cited State v. Singleton, 01-1070, p. 8 (La.App. 4 Cir. 9/25/02), 828 So.2d 1185, 1191.
In the Singleton case, police officers responded to a dispatch that two individuals wanted for armed robbery were staying at a particular apartment. The officers were also told that a gun was in a black purse in the residence. When the officers arrived at the apartment, they spoke with Ms. Reese, the person who was renting the apartment. She gave the officers permission to enter and search the apartment. The officers observed the defendant lying on the sofa and the co-defendant, Ms. Patterson, sitting on a chair. As defendant and Ms. Patterson matched the description of the individuals wanted, they were handcuffed, given Miranda warnings, taken to the steps outside the. apartment, and their names were run through the police computer. The officers learned that Ms. Patterson had an outstanding municipal warrant and that the defendant was a convicted felon. The *70 defendant and Ms. Patterson were then placed under arrest. Ms. Reese consented to a search of her apartment. During the search, the officers found two purses on the sofa where the defendant was located.
The officers asked Ms. Reese and Ms. Patterson if the purses belonged to them. Both denied ownership of the purses. The officers then searched the purses and found a revolver, a camera, and a photograph of the defendant holding a gun, along with personal papers that belonged to Ms. Patterson. This Court held that by denying ownership of the purse, Ms. Patterson effectively abandoned the property, and the seizure of the gun, camera, and film in the camera was proper.
Mr. Duplessis contends that the Singleton case is distinguishable from this case because the officers had probable cause to believe that the defendant and Ms. Patterson had committed an armed robbery, whereas, Officers Long and Beckham had no basis to believe that Mr. Duplessis was involved in any criminal activity when he was detained. He argues that he was being illegally detained and handcuffed without being advised of his rights when he was questioned about the knapsack. The gist of Mr. Duplessis' argument is that his detention was improper and tainted the subsequent abandonment of the knapsack.
To provide a background for addressing the improper detention argument, we find it necessary to outline a trio of Supreme Court cases.
First, in Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the defendant was a patron of a tavern in which a search warrant was executed, which authorized the search of the tavern and the bartender. A pat down frisk for weapons was conducted of all the tavern patrons, and drugs were found on the defendant. Finding no basis to conduct a pat down frisk of the defendant, the Supreme Court reasoned that "[t]he `narrow scope' of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place. Ybarra, 444 U.S. at 92-94, 100 S.Ct. at 343. The Court also noted that the officers could not articulate any specific basis for suspecting that the defendant was armed, dangerous, or possessed contraband.
Two years later, the Supreme Court in Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), held that officers executing a search warrant for contraband have the authority to detain the occupants of the premises while a proper search is conducted. The execution of a warrant to search for narcotics, the Court reasoned, is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. Summers, 452 U.S. at 703, 101 S.Ct. at 2594. The Court further reasoned that the risk of harm to both the police and to occupants is minimized if the officers routinely exercise unquestioned command of the situation. Id. Distinguishing Ybarra, the Court stressed that the defendant in Ybarra did not raise any question regarding the validity of the detention and noted that the issue in Ybarra was only whether the search was valid. Summers, 452 U.S. at 695, 101 S.Ct. at 2590, n. 4.
In Muehler v. Mena, 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005), the Supreme Court expanded the "Summers' authorization to detain an occupant of the place to be searched" to include the use of reasonable force necessary to effectuate the detention. Muehler, 544 U.S. at 98-99, 125 S.Ct. at 1470. The Court reasoned that inherent in the authorization to detain *71 the occupants of premises is the authority to use reasonable force necessary for the detention. Id. Such force, the Court held, includes the use of handcuffs for the duration of the search. The Court noted that the use of handcuffs is even more reasonable when there is a need to detain multiple occupants to execute a warrant. Muehler, 544 U.S. at 100, 125 S.Ct. at 1471.
In this case, the issue Mr. Duplessis raises is the validity of the detention during the search of the bar. Given Summers' authorization to detain an occupant of the place to be searched coupled with Muehler's extension of that authorization to handcuff the occupants for the duration of the search, we cannot find that the detention in this case was invalid. Given our finding that Mr. Duplessis' detention was valid, we now turn to the question of the validity of the search of the knapsack without a warrant.
The general rule is that a search may be conducted only with a warrant which has been issued by a judge on the basis of probable cause.[3] A search conducted without a warrant issued on probable cause is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. State v. Marks, 337 So.2d 1177 (La.1976). One such exception to the warrant requirement, which this court relied on in its pre-trial ruling in this case, is abandonment.
The search without a warrant of abandoned property does not constitute an unreasonable search and does not violate the Fourth Amendment. The rationale behind this exception is that when an individual voluntarily abandons his property, he forfeits any expectation of privacy in it that he might have had. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); State v. Dobard, 01-2629 (La.6/21/02), 824 So.2d 1127.
Generally, an individual enjoys a reasonable expectation of privacy in personal baggage that is protected by the Fourth Amendment. United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). However, an individual who abandons his baggage by denying ownership of it may not contest the constitutionality of its subsequent acquisition by police. United States v. Cofield, 272 F.3d 1303 (11th Cir.2001). "Abandonment for purposes of the. Fourth Amendment differs from abandonment in property law; here, the analysis examines the individual's reasonable expectation of privacy, not his property interest in the item." State v. Stephens, 40,343, p. 7 (La.App. 2 Cir. 12/14/05), 917 So.2d 667, 673 (citing United States v. Fulani, 368 F.3d 351 (3d Cir. 2004), cert. denied, 543 U.S. 1091, 125 S.Ct. 963, 160 L.Ed.2d 901 (2005)). The voluntary denial of ownership constitutes sufficient evidence of the intent to disassociate to prove abandonment. Id. (citing United States v. Lewis, 921 F.2d 1294 (U.S.App. D.C.1990)).
Mr. Duplessis does not dispute that he denied ownership of the knapsack. Rather, he contends that his denial was involuntary and that he could not have abandoned the knapsack because he was already detained and placed in handcuffs before Officer Long asked the bar patrons if any of them owned the knapsack. As discussed above, the detention was justified by the warrant and thus could not, as Mr. Duplessis suggests, taint the abandonment. *72 Because none of the bar patrons claimed ownership of the knapsack, the police reasonably could have assumed it belonged to the bartender. We thus reaffirm our prior holding that once Mr. Duplessis denied ownership of the knapsack he effectively abandoned it, giving the officers the right to search it without a warrant. See Singleton, supra. We thus find that the search of the knapsack and seizure of the cocaine was proper and that the cocaine was admissible evidence at trial.[4]

DECREE
For the forgoing reasons, the conviction and sentence of the defendant is affirmed.
AFFIRMED.
NOTES
[1] State v. Duplessis, 07-0117 (La.App. 4 Cir. 1/29/07)(unpub.).
[2] State v. Duplessis, 07-0309 (La.3/30/07), 953 So.2d 61.
[3] U.S. Const. amend. IV; La. Const. art. I, § 5; La.C.Cr.P. art. 162; United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Tomasetti, 381 So.2d 420, 423 (La.1980).
[4] Mr. Duplessis also argues that the officer improperly searched riot only the knapsack but also a bank envelope that was inside the knapsack and contained drugs. We find this argument without merit. Mr. Duplessis' abandonment of his knapsack encompassed everything inside the knapsack.